UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-81552-CIV-ALTMAN/Brannon

CHRISTINE KROBATSCH,

    *Plaintiff,*

v.

TARGET CORPORATION. *et al.,*

    *Defendants.*

_____/

## ORDER

After Christine Krobatsch slipped and fell in a Target store, she sued Target Corporation and the store's manager, Scott Hoffmann,[1] in state court. *See* Complaint [ECF No. 1-2]. The Defendants timely removed the case by invoking this Court's diversity jurisdiction. *See* Notice of Removal ("Notice") [ECF No. 1]. In doing so, the Defendants argued that Hoffmann, who would otherwise destroy diversity, was fraudulently joined. *Id.* ¶ 14. Krobatsch now asks the Court to remand the case, because (she says) Hoffmann *could be* liable for her fall. *See* Motion to Remand (the "Motion") [ECF No. 11]. For the reasons set out below, that Motion is **GRANTED**.

## THE FACTS[2]

On February 23, 2020, Christine Krobatsch ("Krobatsch" or "the Plaintiff") was a customer

---

[1] Collectively "the Defendants."

[2] "[T]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005); *see also id.* at 1323 ("[W]e resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is, when *both* parties have submitted *evidence* of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*") (emphasis in original). The Defendants have submitted an affidavit Hoffmann signed under penalty of perjury. *See* Hoffmann Aff. [ECF No. 1-7]. Despite having two opportunities to rebut the assertions Hoffmann made in this affidavit—first in her Motion to Remand and then again in her Reply—the Plaintiff has said nothing (and done

in a Delray Beach Target. *See* Compl. ¶¶ 6–7. When she reached the checkout area, she slipped and fell because of some wine that had leaked out of an abandoned basket and onto the floor. *See id*. ¶¶ 8–9.

Hoffmann, the "executive team leader of general merchandise/food" at that Target, was the "Leader on Duty" that day, which made him the "manager of the store." Hoffmann Aff. ¶ 3. In his Affidavit, Hoffmann attests that he didn't see the Plaintiff fall and only "responded to the front end of the store after the incident occurred"—at which point he documented the incident. *Id*. ¶¶ 5–6. Hoffmann denies causing the spill, seeing the spill, or being aware of anyone slipping or falling in the front area of the store. *Id.* ¶¶ 7–12. Hoffmann concludes by saying that he "has no personal knowledge as to how or when the liquid came to be on the floor" and insists that he "kept a look out for liquid, debris, objects and substances on the floor" throughout that day. *Id.* ¶¶ 14–15.

## THE LAW

It is the Court's responsibility to "zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). A federal court should, therefore, remand to state court any case that has been improperly removed. *See* 8 U.S.C. § 1447(c). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has

---

nothing) in response to it. *See generally* Motion; Reply [ECF No. 15]. In adjudicating the Motion to Remand, then, the Court will consider both the well-pled allegations of the Complaint and the unimpeached averments of Hoffmann's Affidavit.

defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

"When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a 'fraudulent joinder[.]'" *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co*., 663 F.3d 1329, 1332 (11th Cir. 2011). "This burden is a heavy one," *id.*, because "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Coker v. Amoco Oil Co*., 709 F.2d 1433, 1440–41 (11th Cir. 1983)); *see also Henderson*, 454 F.3d at 1284 ("Henderson's patchy allegations may ultimately prove insufficient, but we are unable to say there is no possibility she has asserted a colorable claim . . . .").

Finally, "[a]ll doubts about the propriety of removal should be resolved in favor of remand." *King v. Gov't Emps. Ins. Co.*, 579 F. App'x 796, 800 (11th Cir. 2014); *Univ of S. Ala. v.*

*Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("[A]ll doubts about jurisdiction should be resolved in favor of remand").

<h2 style="text-align:center">ANALYSIS</h2>

The question in this case is simple: *Could* Hoffmann be liable under Florida law for the Plaintiff's fall? If he *could* be, then his joinder to the Complaint was not fraudulent—and, because the parties would be non-diverse, the case would be remanded for lack of subject-matter jurisdiction. On the other hand, if there's no possibility that Hoffmann could be liable to the Plaintiff under state law, then the joinder was fraudulent, Hoffmann's citizenship would be irrelevant to the diversity inquiry, and this Court would retain jurisdiction.[3]

### I.     Florida Law on Store Manager Liability

To prevail on her negligence claim, *see* Compl. ¶¶ 15–18, the Plaintiff must prove four elements: "(1) the existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others including the plaintiff; (2) a failure on the part of the defendant to perform that duty; and (3) an injury or damage to the plaintiff [(4)] proximately caused by such failure." *Kenz v. Miami-Dade Cty.*, 116 So. 3d 461, 464 (Fla. 3d DCA 2013).

In Florida, "the law is clear to the effect that officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment." *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005). But, "to establish liability, the complaining party must allege and prove that the

---

[3] Without Hoffmann (a Florida citizen), the only remaining parties are the Plaintiff, a Florida citizen, and the Defendant, Target, a Minnesota corporation with its principal place of business in Minnesota. *See* Notice ¶¶ 3–4. In that scenario, therefore, the parties would be diverse. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction [under § 1332] requires complete diversity; every plaintiff must be diverse from every defendant.").

4

officer or agent owed a duty to the complaining party, and that the duty was breached through personal (as opposed to technical or vicarious) fault." *Id.*; *see also Vesta Const. and Design, L.L.C. v. Lotspeich & Assoc., Inc.*, 974. So. 2d 1176, 1180 (Fla. 5th DCA 2008) ("A corporate officer or employee is not liable for the torts of the company simply because of the person's position with the company.") A duty thus arises only if the agent is "actively negligent." *White*, 918 So. 2d at 358. Of course, a defendant's *failure* to act in circumstances in which a reasonable person would have acted can be evidence of such active negligence. *See id.* ("[The Third Amended Complaint] alleges that Gregg was directly responsible for carrying out certain responsibilities; that he negligently failed to do so; and that, as a result, Ms. White was injured."). At the same time, "an officer or agent may not be held personally liable simply because of his general administrative responsibility for performance of some function . . . ." *Id.* (cleaned up).

## II.    The Parties' Positions

The Plaintiff alleges that Hoffmann, as store manager, "had a duty [(1)] to use reasonable care in the inspection, maintenance, operation, repair and cleaning of the Target store," and (2) "to provide adequate and appropriate warnings of any dangerous conditions." Compl. ¶¶ 15–16. Hoffmann, the Complaint says, "breached his duty of care . . . by negligently failing to properly inspect, monitor, and maintain the floor in the area where the Plaintiff slipped and fell." *Id*. ¶ 17. And, the Plaintiff adds, she sustained injuries "as the direct and proximate cause of the aforesaid negligence[.]" *Id*. ¶ 18.

In their Notice of Removal, the Defendants argue that the Plaintiff has failed to allege either (1) that Hoffmann owed her a duty of care or (2) that Hoffmann was in any way "actively negligent." Notice ¶ 11; *see also id.* ¶ 10 ("The Complaint contains no specific allegations regarding HOFFMANN'S personal involvement in the alleged incident."). Indeed, the Defendants

5

contend, Hoffmann *couldn't* have been "actively negligent" because he didn't *personally* cause (or know about) the spill before the accident occurred. *See* Notice ¶ 11. In a nutshell, the Defendants contend that Hoffmann *cannot* be liable to Krobatsch because she "does not allege that HOFFMANN caused the liquid substance to be on the floor nor that he knew the substance was on the floor before she fell." *Id*. ¶ 11. In the Defendants' view, then, these facts lead to one ineluctable conclusion: Hoffmann was "fraudulently joined solely to defeat diversity jurisdiction." *Id*. ¶ 10.

In her Motion to Remand, the Plaintiff rightly notes that the mere lack of knowledge is insufficient to foreclose *any possibility* of liability. Mot. ¶ 13. And, she submits, she *did* allege both that Hoffmann owed her a duty and that he was actively negligent. *See id.* ¶ 14 ("Plaintiff alleges that Hoffman [sic] was negligent because he had a duty to inspect the store with reasonable care and that he failed to exercise that duty with reasonable care. Hoffman's [sic] statement that he did not know about any liquid substance does not show he was not negligent in performing those inspection duties."). For instance, "[h]ad Hoffman [sic] exercised reasonable care in inspecting and monitoring the store premises, he would have discovered the presence of the transitory foreign substance that caused Plaintiff's fall, and could have taken steps to eliminate or warn of the danger." *Id.* ¶ 11.

In support, the Plaintiff points to *Herrera v. Wal-Mart Stores, Inc*., 2016 WL 8669216, at *3 (S.D. Fla. Aug. 22, 2016), where this Court rejected the defendants' fraudulent-joinder arguments because, although the manager-defendant (like Hoffmann here) had sworn that she didn't know about the spill in advance, she admitted that "all Wal-Mart employees, regardless of position, are responsible for monitoring the floors and ensuring that there are no substances that could create a slip hazard." *Id*. On those facts, this Court found that the Plaintiff *could have* stated

6

a claim against the store manager for negligently failing to monitor the floors and remanded the case, reasoning: "It is not the role of the Court at this juncture to weigh the merits of Plaintiffs' claim." *Id.*

In their Response, the Defendants rely on four cases for the proposition that, to prevail on a negligence claim against a store manager, a plaintiff must establish that the manager knew about the spill in advance. *See* Response ¶¶ 12, 20–24 (citing *Siciliano v. Target Corp.*, 2014 WL 12461368, at *2 (S.D. Fla. Aug. 4, 2014) (finding fraudulent joinder where the plaintiff argued only that the defendant had failed "to enforce Target's policies and procedures, and fail[ed] to properly train Target's staff regarding identifying and remediating hazardous conditions"); *Petigny v. Wal-Mart Stores East, L.P.*, 2018 WL 5983506, at *3 (S.D. Fla. Nov. 14, 2018) ("Plaintiff's Amended Complaint does not contain factual allegations that Pericles was personally at fault or actively negligent. Plaintiff does not allege facts showing that Pericles caused grapes to be on the floor, was told the grapes were on the floor, knew or should have known about the grapes being on the floor, or was in the area of Plaintiff's incident prior to same in order to correct it."); *Kalit v. Target Corp.*, 2019 WL 423318, at *3 (M.D. Fla. Feb. 4, 2019) (dismissing defendant as fraudulently joined where "each Target employee [was] responsible for cleaning up small spills they encounter, but Target employ[ed] a separate company to clean and wax the floors at night"); *White*, 918 So. 2d at 358 ("[The Third Amended Complaint] alleges that Gregg was directly responsible for carrying out certain responsibilities; that he negligently failed to do so; and that, as a result, Ms. White was injured. Such allegations are legally sufficient to withstand a motion to dismiss for failure to state a cause of action.")).

### III.    Why the Plaintiff Prevails

The Defendants face an uphill battle. They must show, by "clear and convincing evidence,"

*Stillwell*, 664 F.3d at 1332, that "there is *no* possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Triggs*, 154 F.3d at 1287 (emphasis added). And, in the context of removal, ties go to the Plaintiff. *See King*, 579 F. App'x at 800 ("All doubts about the propriety of removal should be resolved in favor of remand.").

That "heavy" burden aside, this call isn't close. As the Plaintiff points out, "Hoffman's [sic] statement that he did not know about any liquid substance does not show he was not negligent in performing those inspection duties." Mot. ¶ 14. Of course, Hoffmann's Affidavit is pellucid (and unrebutted) that he didn't see the spill, he wasn't told about the spill, he didn't overhear anyone mention a spill, and he was totally unaware of the spill until he was called to the front to attend to the Plaintiff. *See* Hoffmann Aff. ¶¶ 7–15. But these disavowals suggest only that Hoffmann didn't have *actual* notice. Under Florida law, however, the manager of a store can be liable if he has either actual *or constructive* notice. *Cf. Winn-Dixie Stores, Inc. v. Guenther*, 395 So. 2d 244, 246 (Fla. 3d DCA 1981) ("[T]estimony that the liquid was dirty and scuffed and had several tracks running through it was, in our opinion, adequate to impute constructive notice of the hazardous condition to the store manager."). And Hoffmann's affidavit—which appears to (improperly) conflate the similar-sounding, but functionally-distinct, concepts of "actual notice" and "active negligence"—tells us absolutely nothing about *constructive* notice. *See generally* Hoffmann Aff. Hoffmann, for instance, doesn't tell us what (if anything) his duties required him to do—or what protocols he was obliged to implement—*before* a spill took place in order to ensure that spills do not (or only infrequently) occur. Nor (it goes without saying) does Hoffmann ever tell us that he followed those rules and implemented those protocols precisely as he was taught to do. Since he doesn't address this second—and alternative—basis for negligence liability, we are left (in answering these questions) only with the well-pled allegations of the Complaint.

And the Complaint is clear that Hoffmann was responsible for monitoring the cleanliness of the floors, *see* Compl. ¶ 15—a proposition that, again, Hoffmann never challenges, *see generally* Hoffmann Aff. The Complaint also charges Hoffmann with breaching this "duty of care . . . by negligently failing to properly inspect, monitor, and maintain the floor . . . ." *Id.* ¶ 17. If Hoffmann were (as the Plaintiff says) responsible for keeping the floors clean, he *could be* liable if he didn't know about the spill *precisely because* he was negligent in carrying out those responsibilities— say, because, when one of his employees came to tell him about the spill, he was on a personal call, was out smoking a cigarette, or had stayed too long on his lunch break. And so, while Hoffmann does say that he "kept a look out for liquid, debris, objects and substances on the floor," Hoffmann Aff. ¶ 15, he fails to tell us whether he ensured that his employees did the same—and, if he had, whether he did enough.

Unsurprisingly, all four of the Defendants' cases support this conclusion. In *Kalit*, for example, the store manager was dismissed from the action because, the record was clear, she *wasn't* responsible for keeping the store clean. *See Kalit*, 2019 WL 423318, at *3 ("Target employs a separate company to clean and wax the floors at night.  Figueroa was not in charge of hiring the cleaning company, and she did not know the cleaning company's name. She testified that if there was a problem with the cleaning company, she would contact the manager in charge of the building."). And *White*, of course, came out the other way—the court found that the defendant *had been* properly joined—precisely because, as here, the plaintiff there alleged that the manager-defendant *was* "directly responsible for carrying out certain responsibilities" and had negligently failed to do so. *See White*, 918 So. 2d at 358. Because the Plaintiff here has alleged that Hoffmann *was* responsible for keeping the floors clean—the very same allegation that, though missing from *Kalit*, was included in White—this Court follows both *Kalit* and *White* in concluding that the

Defendants have failed to satisfy their "heavy" burden of showing that Hoffmann *could never be* liable to the Plaintiff.

And *Siciliano* and *Petigny* are just the same. In the former—unlike here—the plaintiff failed to allege that the store manager was responsible for keeping the floors clean. *See Siciliano*, 2014 WL 12461368, at *2. Instead, she averred only that the manager hadn't followed certain unspecified "policies and procedures," which—untethered from any specific obligation to, for instance, keep the floors clean—the Court found too attenuated to justify the joinder. *Id.* ("Siciliano relies solely on the allegations in her complaint, reiterating in her motion that Morrison's affidavit does not address her allegations related to Morrison's alleged failure to enforce Target's policies and procedures, and failure to properly train Target's staff regarding identifying and remediating hazardous conditions. . . [But] Siciliano failed to present any case law that a manager can be individually liable for failing to properly train staff in remedying a hazardous condition in any analogous circumstances."). In *Petigny*, the plaintiff had failed to allege *any* constructive notice at all—had failed, in the Court's words, to assert that the manager "knew ***or should have known*** about the grapes being on the floor." *Petigny*, 2018 WL 5983506, at *3 (emphasis added). As the emphasized text makes plain, nothing in *Petigny* should be taken to mean that a store manager cannot be liable *even where* (as here) the plaintiff *does* allege constructive ("should have known") notice.

Now, none of this may prove true, of course: Hoffmann may have had no such obligation to keep the floors clean; and, even if he did, he may well have done everything he should have done. But the Plaintiff "is not required to prove the claim at this stage of the case, where she does not have the benefit of discovery, not even the identity of the manager or a list of his specific responsibilities in managing the store." *Francis v. Walgreen Co.*, 2010 WL 11597968, at *4 (S.D.

10

Fla. Mar. 31, 2010).

One (penultimate) note. The Defendants insist that Hoffmann was joined only "in an attempt to defeat diversity and to obstruct removal," Notice ¶ 38. This, again, may well be true. But this Court should not "make an inquiry into the Plaintiff's motive in adding a non-diverse defendant." *Santacruz v. Target Corp.*, 2009 WL 10670466, at *3 (M.D. Fla. Oct. 16, 2009); *see also id.* (remanding a case where, as here, the plaintiff alleged that the store manager "was responsible for maintaining the store floor and doorway and that he negligently failed to do so, resulting in Plaintiffs' injury").

Finally, a word on fees. "[T]he standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005). And, generally, a district court should award fees under § 1447(c) only when "the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. This Court rejects the Plaintiff's request for fees because the Defendants' removal—though improper—had "an objectively reasonable basis."

***

Having carefully considered the Motion, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that this case is **REMANDED** to the 15th Judicial Circuit Court in and for Palm Beach County, Florida. The Clerk of Court shall **CLOSE** this case. Any pending deadlines and hearings are **TERMINATED**. All other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of October 2020.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record